BOWEN, Presiding Judge.
The appellant was indicted on two counts of distributing marijuana, a violation of Ala. Code 1975, § 13A-12-211. He was acquitted of the offense charged in Count 1 and convicted of the offense charged in Count 2. The appellant was sentenced to eight years’ imprisonment and was assessed $1,000 pursuant to the Demand Reduction Assessment Act, Ala.Code 1975, § 13A-12-280, et seq. On this direct appeal of his conviction, the appellant raises three issues.
I
The State’s evidence established that on two occasions the appellant sold a $25 bag of marijuana to Thomas Savage, an informant for the Lawrence County Drug Task Force. Savage tape-recorded both drug transactions. At trial, the prosecution offered and the court admitted into evidence the tape recordings and transcripts of the recorded conversations between the appellant and Savage.
The appellant claims that the trial court erred by allowing the recordings and transcripts into evidence because, he says, the State failed to prove a proper predicate or to establish an unbroken chain of custody prior to their admission.
The predicate was established by Savage’s testimony that the tape recorder he used was in proper working order at the time the conversations were recorded, and that he had listened to the tape recordings and reviewed the transcripts several times and both accurately reflected the conversations he had had with the appellant.
“[W]hen a qualified and competent witness can testify that the sound recording ... accurately and reliably represents what the witness sensed at the time in question, then the foundation required is that for the ‘pictorial communication’ theory. Under this theory, the party offering the item must present sufficient evidence to meet the ‘reliable representation’ standard, that is, the witness must testify that the witness has sufficient personal knowledge of the scene or events pictured or the sounds recorded and that the item offered accurately and reliably represents the actual scene or sounds.”
Ex parte Fuller, 620 So.2d 675, 678 (Ala. 1993).
The appellant’s argument that the State failed to prove a complete chain of custody for the tape recordings is without merit.
“[T]ape recordings do not require proof of a chain of custody to be admissible.... [S]ound tapes, like photographs, are admissible when a witness testifies they are reliable representations of the subject sound. Molina v. State, 533 So.2d 701, 712 (Ala.Cr.App.1988); C. Scott, Photographic Evidence § 1297 at 97 n. 42.5 (1987 Pocket Part).”
Strother v. State, 587 So.2d 1243, 1247 (Ala. Cr.App.1991).
II
The appellant claims that the trial court curtailed his right to a thorough and sifting cross-examination of State’s witness Bill Carraway, Director of the Lawrence County Drug Task Force.
Carraway testified that the Drug Task Force kept 90% of the evidence seized in drug cases in a secure area containing an evidence locker to which only he had access. However, because the Task Force was “in the transition of changing over [its] evidence custodian,” R. 98, some evidence, including the marijuana in this case, was kept not in the evidence locker but in the custody of the individual case agent. Defense counsel asked Carraway whether there had ever been “occasions when evidence was seized and then later lost,” and Carraway responded ‘Tes.” R. 99. The appellant contends that the court erred when it prevented him from questioning Carraway about particular instances in which the evidence in other drug cases was lost.
“Defendant’s right of confrontation necessarily includes the right to cross-examine witnesses, but that right does not extend to matters which are irrelevant and have little or no probative value.” Hall v. State, 500 So.2d 1282, 1286 (Ala.Cr.App.1986) (quoting Young v. State, 429 So.2d 1162, 1163 (Ala.Cr. App.1983)). The fact that evidence in other *977 drug cases had been lost had no bearing on the admissibility of the evidence in this ease. Cf. Dill v. State, 600 So.2d 343, 365 (Ala.Cr. App.1991) (wherein the court determined that defense counsel could not attempt to impeach a State’s witness by an unrelated, specific bad act), affirmed, 600 So.2d 372 (Ala.1992), cert. denied, 507 U.S. 924, 113 S.Ct. 1293, 122 L.Ed.2d 684 (1993); Hall v. State, 500 So.2d at 1286 (wherein the court held that the defense could not inquire into the prosecutrix’s prior sexual conduct because it had no bearing on whether she had consented to sexual relations with the accused).
“The trial court has broad discretion in determining the relevancy of evidence, and its determination will not be reversed absent’ a clear abuse of discretion.” McCray v. State, 591 So.2d 108, 113 (Ala.Cr.App.1991) (citations omitted). We find no such abuse in this case.
Ill
The appellant claims that the trial court erred by sentencing him under the schoolyard enhancement statute, Ala.Code 1975, § 13A-12-250, because, he says, (1) the jury verdict did not specifically state that he sold marijuana, and (2) the prosecution did not establish that the offense occurred within three miles of a school.
Count 2 of the indictment charged that the appellant did “unlawfully sell, furnish, give away, manufacture, deliver, or distribute ... marijuana.” C.R. 4. The jury returned a verdict finding the appellant guilty of the offense charged in Count 2. The appellant argues that because the general verdict did not specify that he was guilty of a sale, he should not have been sentenced under the schoolyard enhancement statute, which he argues apples solely to a sale of controlled substances. See Ex parte Mutrie, 658 So.2d 347 (Ala.1993).
In Pettway v. State, 624 So.2d 696 (Ala.Cr. App.), cert. denied, 624 So.2d 700 (Ala.1993), the accused argued that the schoolyard enhancement statute was unconstitutional because it created a new criminal offense without requiring “that the prima facie elements be determined by a jury under the beyond a reasonable doubt standard.” Pettway, 624 So.2d at 698. This court observed that because the schoolyard enhancement statute “need not even be referred to in the indictment,” it clearly “applied] only to sentencing.” Id. at 698-99. “As th[is] statute]] coneern[s] only sentencing considerations, [it is] properly appled by the trial court.” Id. at 699. Compare Ex parte Guess, 507 So.2d 551, 552-53 (Ala.1987) (when evidence shows that accused used a firearm in commission of offense, sentencing judge may apply firearm enhancement statute even in absence of specific jury finding that accused used a firearm).
Moreover, the evidence at trial clearly established that appellant participated in the sale of a controlled substance.
“We need not define the parameters of the conduct embraced within the term ‘sale’ as used in the schoolyard sentence enhancement statute because, in this case, the evidence shows that the appellant accepted $40 from an undercover law enforcement officer in exchange for .130 grams of crack cocaine. A ‘sale’ is commonly understood as a transfer of property for money. The Random, House Dictionary of the English Language at 1693 (2d ed: 1987). Words used in the statute must be give their natural, plain, ordinary, and commonly understood meaning.’ Alabama Farm Bureau Mutual Casualty Ins. Co. v. City of Hartselle, 460 So.2d 1219, 1223 (Ala.1984). See also Buckelew v. State, 48 Ala.App. 411, 415, 265 So.2d 195, 197, cert. denied, 288 Ala. 735, 265 So.2d 202, cert. denied, 409 U.S. 1060, 93 S.Ct. 558, 34 L.Ed.2d 512 (1972).”
Smith v. State, 589 So.2d 798, 799 (Ala.Cr. App.1991).
The State also proved by a preponderance of the evidence that the sale of marijuana occurred within three miles of a school. At trial, Thomas Savage testified that the sale took place at “Three Springs [a correctional facility for juveniles], where Willie Orr was living at the time.” R. 188. At the sentence hearing, two police officers testified that they had measured the distance from the parking lot at Three Springs to the R.A.
*978 Hubbard Elementary School and to the Courtland High School by vehicle odometer. The distance from the parking lot to each school was less than one mile. The fact that the officers’ odometers had not been recently certified for accuracy affected the weight and not the admissibility of their testimony. Cf. Jones v. State, 513 So.2d 50, 52 (Ala.Cr.App.1986) (even though state trooper “ ‘repeatedly testified that he could not verify the accuracy of the machine he used,’” that fact affected the weight and not the admissibility of results of photoelectric intoximeter test); Tidwell v. State, 496 So.2d 109, 112 (Ala.Cr. App.1986) (“Although [the State’s drug analyst] could not state the ‘last time’ the scales were cheeked for accuracy, he testified that the scales were accurate, that they were checked ‘once a month, frequently more sometimes,’ that ‘we make sure that the scales are functioning properly,’ and that in his opinion, the scales were accurate based on what he ‘had done’ and his ‘observations.’ The trial judge properly ruled that the question of the accuracy of the scales affected the weight of the expert testimony and not its admissibility.”).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.