549 So.2d 53 (1989)
Sherry Yvette McCOY a/k/a Sherry McCoy Kellman
v.
Amos McCOY, et al.
88-334.
Supreme Court of Alabama.
July 14, 1989.
As Modified on Denial of Rehearing August 25, 1989.
*54 Robert P. Lane of Phillips and Funderburk, Phenix City, for appellants.
J. Pelham Ferrell of Ferrell & Britton, Phenix City, for appellees.
SHORES, Justice.
Plaintiff Sherry Yvette McCoy, now known as Sherry McCoy Kellman (hereinafter referred to as "Kellman"), appeals from a judgment in favor of Amos McCoy and others (hereinafter referred to as defendants). That judgment denied her petition for the sale of certain Russell County land for division of the proceeds, holding that she is neither the daughter nor the heir-at-law of Jimmie Lee McCoy or Sarah Hoskins McCoy.[1] Kellman alleged that she owned a one-twelfth interest in that land.
Kellman contends that she is the only child and the sole heir-at-law of Sarah Hoskins McCoy, deceased, who was the only child and sole heir-at-law of Sallie McCoy Hoskins. Sallie McCoy Hoskins was one of twelve surviving children of James McCoy, who died intestate and who was the predecessor in title to all the parties herein concerning the subject land. The defendants denied that Kellman was an heir of Sarah Hoskins McCoy and denied that Kellman owned a one-twelfth interest in the subject real estate. The case was tried on this issue.
The following evidence was presented at trial in support of Kellman's contention that she was the child of Jimmie Lee McCoy and Sarah Hoskins McCoy.
Kellman introduced a "special certificate of birth" executed by Sarah Hoskins McCoy pursuant to Ala.Code 1975, §§ 22-9-8 and 22-9-34. On the "special certificate of birth," Jimmie Lee McCoy and Sarah C. Hoskins (one and the same as Sarah Hoskins McCoy) were listed as the father and mother, respectively, of Sherry Yvette McCoy (Kellman).
Kellman introduced a Y.M.C.A. swimming certificate, two 4-H Club membership certificates, and an R.O.T.C. medal award certificate, all of which showed "Sherry McCoy" as the recipient.
Kellman testified that Sarah Hoskins McCoy and Jimmie Lee McCoy were her parents, and that she attended family barbecues and church with them. She further testified that they attended her high school graduation and school pageants.
Funeral programs, obituary notices, and the death certificates of Sarah Hoskins McCoy and Jimmie Lee McCoy were introduced *55 into evidence. They all listed Sherry Yvette McCoy (Kellman) as a surviving daughter of the deceaseds.
Jimmie Lee and Sarah Hoskins McCoy's tax returns for the years 1970 and 1975 were introduced, showing "Sherry" as a dependent. An insurance policy on the life of Jimmie Lee McCoy, naming Kellman as contingent beneficiary, was introduced into evidence. Carrie Hoskins, Sarah Hoskins McCoy's stepmother, testified that Kellman was the daughter of Sarah Hoskins McCoy.
Undisputed testimony revealed that Kellman lived with Carrie and Sheppard Hoskins (Sarah Hoskins McCoy's parents) most of the time until she was approximately 12 years old, and that she then moved into the McCoys' residence on a permanent basis. There was evidence that while she lived with the Hoskinses she used the last name "Hoskins" and referred to Carrie Hoskins as her mother and to Sarah Hoskins McCoy as her sister.
Carrie Hoskins took Kellman to school on a daily basis, and Kellman was registered as Sherry Hoskins. Also, on her school records, Sheppard Hoskins was listed as Kellman's "father or guardian" and Carrie Hoskins was listed as her "mother or guardian."
In 1972, according to the custodian of records at Mount Olive School, Carrie Hoskins produced the special certificate of birth and requested that Kellman's last name be changed from Hoskins to McCoy, but the records were not changed regarding the Hoskinses' status as her parents or guardians.
In Sheppard Hoskins's obituary notice, "Sherry Yvette Hoskins" (Kellman) was listed as one of his surviving daughters, together with Sarah Hoskins McCoy.
Lillian McCoy, whose name appeared as that of one of the witnesses on the special certificate of birth and who was Jimmie Lee McCoy's sister-in-law, testified that she had known Jimmie Lee McCoy for approximately 20 years and that to her knowledge he had never had any children by Sarah Hoskins McCoy, nor by his two prior wives. She further testified that the signature on the special certificate of birth was not hers, and that no one had ever asked her to witness the certificate. Lillian McCoy also testified that on one occasion, after Kellman was "grown," Kellman had inquired of her as to who her parents were, and Lillian said she responded by saying that she did not know.
Jimmie Lee's mother, Mary McCoy, testified that he had never had any children, and that as a "young man" he had had mumps that "went down on him." Alberta Davis, Jimmie Lee's sister, confirmed that he had had mumps; she also testified that she was familiar with his and Lillian McCoy's signatures and that the signature on the special certificate of birth was not Lillian McCoy's and that the signature on the insurance policy naming Sherry Hoskins McCoy the contingent beneficiary was not that of Jimmie Lee McCoy.
Amos McCoy, one of the defendants and also the custodian of records for Macedonia Baptist Church, testified that Kellman was baptized in the name of Sherry Hoskins but that the name on her baptismal record was later changed to McCoy, as it was on her school records.
Velma Harris, an ex-wife of Jimmie Lee McCoy, testified that she and Jimmie Lee McCoy engaged in sexual intercourse at least once a week without the use of contraceptives, and that she never gave birth to a child by him. She said that so far as she knew, he never had a child by anyone.
The defendants presented many witnesses who testified, in substance, that Kellman was known in the community, for at least the first 15 years of her life, as "Sherry Hoskins" and that Carrie Hoskins took care of her.
Furthermore, a host of other witnesses, some of whom were defendants, testified that it was known in the community that a woman by the name of Eva Mae Chambers was the natural mother of Kellman, and there was much testimony by persons who had been in close contact with Sarah Hoskins McCoy to the effect that she did not appear to be pregnant in 1959-60, the period during which Kellman was allegedly conceived and born.
*56 Sarah Hoskins McCoy had been previously married in 1946 to one Willie Anderson. A decree divorcing them was not entered until 1971. However, Sarah Hoskins McCoy had married Jimmie Lee McCoy in 1961; therefore, Kellman was born while Sarah Hoskins McCoy was lawfully married to Willie Anderson.
After a nonjury trial, the court held that Kellman was not the natural daughter or heir-at-law of Jimmie Lee McCoy or Sarah Hoskins McCoy.
Kellman filed a motion for a new trial, alleging that the trial court, in its judgment, had not addressed the issues raised as to whether a legitimation or a "common law adoption" had occurred. The motion was denied, and Kellman appealed. We affirm.
Kellman contends that the trial court erred in placing the burden on her to prove that she is the natural child and heir-at-law of Jimmie Lee McCoy and Sarah Hoskins McCoy. We disagree, and adopt that pertinent portion of the trial court's opinion regarding the presumption of paternity and the special certificate of birth that was issued pursuant to Code 1975, § 22-9-8 et seq.; that portion is as follows:
"After a full and due consideration of all matters taken under submission, the Court finds as follows:
"It is well-established that the burden is on the plaintiff to prove to the reasonable satisfaction of the Court the truthfulness of the material allegations contained in her complaint.
"In order to meet the burden cast upon her, it is incumbent on the plaintiff to prove to the reasonable satisfaction of the Court that she is the natural daughter of Jimmie (or `Jimmy') Lee McCoy [and Sarah C. Hoskins] as reflected on the Special Certificate of Birth admitted in evidence as plaintiff's Exhibit 1. While under the provisions contained in § 22-9-8 et seq. of the Code of Alabama, the facts stated on the Special Certificate of Birth are prima facie presumed correct, such presumption is, nevertheless, rebuttable by evidence reasonably satisfying the Court that such facts are not, indeed, true. In this regard, the Court cites with approval the case of Turner v. State, 41 Ala.App. 310, 131 So.2d 428 (1961), in which the Court ruled that the statute making a certified copy of a record in the custody of the Registrar of Vital Statistics, such as plaintiff's Special Certificate of Birth, prima facie evidence of the facts stated therein has not elevated such record or certificate to the status of a document falling under the best evidence rule and, thus, such facts are not conclusive but are rebuttable by such evidence or testimony as may tend to show to the reasonable satisfaction of the Court that such facts are incorrect. In this action, the Court is reasonably satisfied from a preponderance of the evidence that the facts stated in plaintiff's Special Certificate of Birth are not true and correct insofar as they purport to show that plaintiff is the natural child... of Sarah Hoskins McCoy. The ruling of the Court in Turner is supported by decisions of the Supreme Court holding that certificates issued by the Registrar are not direct evidence of the facts set out on the face of the certificates. See Independent Life & Accident Co. v. McGee, [McGehee] 284 Ala. 394, 225 So.2d 805 (1969), and Jefferson Standard Life Insurance Co. v. Pate, 290 Ala. 110, 274 So.2d 291 (1973).
"The Court is further reasonably satisfied from the evidence that as of the date of plaintiff's birth as shown on the Special Certificate of Birth and for several years prior thereto, Sarah Hoskins McCoy (nee Sarah Hoskins) was still the lawful wife of one Willie Anderson, which leads to a presumption that if plaintiff is indeed the natural daughter of Sarah Hoskins, then Willie Anderson is her father. This presumption of paternity on the part of Willie Anderson is supported by the decision in the case of Curry v. Curry, 402 So.2d 1019 (Ala.Civ. App.1981), in which the Court ruled that `... a child born of a married woman, no matter when conceived, is presumed to *57 be the legitimate child of her husband.'[2] In so holding, the Court cited two prior Supreme Court cases in which like rulings were handed down. The plaintiff in this case neither alleges nor attempts to prove that she is [an] issue of the marriage between Sarah Hoskins and Willie Anderson.
"On the basis of the above and foregoing findings, it is ORDERED AND ADJUDGED by the Court that the relief sought by plaintiff in her complaint be, and the same hereby is, denied."
In cases tried ore tenus, there is a presumption of correctness, and the trial court's findings of fact will not be disturbed on appeal unless they are palpably wrong, manifestly unjust, or without supporting evidence. Silverman v. Charmac, Inc., 414 So.2d 892 (Ala. 1982). The evidence of record amply supports the trial court's judgment, and the findings of fact supporting that judgment are not manifestly unjust or palpably wrong.
Under Code 1975, § 22-9-8 et seq., the special certificate of birth is prima facie evidence that Kellman is the daughter of Sarah Hoskins McCoy. However, competent evidence can refute the prima facie case established by the certificate. Pickens v. Equitable Life Assurance Society of the United States, 413 F.2d 1390 (5th Cir. 1969).
After the special certificate of birth and other items of supporting evidence were rebutted by the defendants, Kellman failed to produce sufficient evidence to overcome the rebutting evidence and to substantiate her allegations.
Kellman contends that the trial court erred in not finding that Sarah Hoskins McCoy legitimated her under the Alabama Uniform Parentage Act, Code 1975, § 26-17-1 et seq.
Code 1975, § 26-17-2, defines the "parent-child relationship" under this chapter as:
"[T]he legal relationship existing between a child and his natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties and obligations." (Emphasis added.)
Upon a trial court's finding that, as an established fact, a person is not the natural child of another, it logically follows that the legitimation provisions contained in the Alabama Uniform Parentage Act, supra, are inapplicable to create a presumption of legitimacy. The Act expressly applies to natural or adoptive parent-child relationships. The trial court found, with supporting evidence, that Jimmie Lee McCoy and Sarah Hoskins McCoy were not Kellman's natural parents. Nor did the evidence indicate that an adoption was perfected pursuant to Code 1975, § 26-10-1 et seq. Therefore, the provisions of Code 1975, § 26-17-1 et seq., are inapplicable in this case.
Kellman contends that a woman who is not the biological mother of a child can nevertheless have a "common law adoption" of a child and thereby render that child capable of inheriting from her estate.
In order to adopt a child in Alabama, one must follow the statutory adoption procedures set out by the legislature. See, Code 1975, § 26-10-1 et seq. Adoption is purely statutory and is in derogation of the common law. Doby v. Carroll, 274 Ala. 273, 147 So.2d 803 (1962); Evans v. Rosser, 280 Ala. 163, 190 So.2d 716 (1966). We have always required strict adherence to the statutory requirements in adoption proceedings. Ex parte Sullivan, 407 So.2d 559 (Ala.1981).
The provisions of the Alabama Uniform Parentage Act, supra, can not be used to create a "common law adoption." Without compliance with the adoption procedures as set out in Code 1975, § 26-10-1 et seq., there can be no parent-child relationship created by adoption.
*58 After careful consideration of the evidence and the arguments presented by the parties, we conclude that the judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, HOUSTON and KENNEDY, JJ., concur.

ON APPLICATION FOR REHEARING
SHORES, Justice.
OPINION MODIFIED. APPLICATION OVERRULED.
HORNSBY, C. J., and JONES, HOUSTON and KENNEDY, JJ., concur.
NOTES
[1] Sarah Hoskins McCoy died in August 1979, when our old probate code was in effect. Her husband, Jimmie McCoy, died in April 1984, after the new probate code had become effective. Under the old probate code, see § 43-3-1, Ala.Code 1975 (repealed), Sarah's interest would have passed to Kellman, if Kellman was her daughter, and no interest would have passed to Jimmie. Therefore, it is not apparent to this Court why Jimmie's paternity, or non-paternity, of Kellman is relevant to this suit.
[2] Note, however, Code 1975, § 30-2-12, which declares illegitimate the child born of a pregnancy that serves as the basis of a divorce granted on the grounds that the woman, at the time of the marriage, was pregnant by someone other than the husband. See Ex parte Martin, [MS. 87-637, 694, June 30, 1989] (Ala.1989).